UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOHN H.,[1]

    **Plaintiff,**

v.

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

    **Defendant.**

Case No. 3:24-cv-5045
Magistrate Judge Norah McCann King

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff John H. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court affirms the Commissioner's decision.

**I.    PROCEDURAL HISTORY**

On February 9, 2022, Plaintiff filed his application for benefits, alleging that he has been disabled since April 26, 2019.[3] R. 93, 110, 212–18. The application was denied initially and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).
[3] Plaintiff later amended his disability onset date to August 31, 2018. R. 24, 48.

1

upon reconsideration. R. 111–15, 123–27. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 130–32. ALJ Tonya Green held a hearing on November 14, 2023, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 39–92. In a decision dated December 8, 2023, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from August 31, 2018, Plaintiff's amended alleged disability onset date, through December 31, 2020, the date on which Plaintiff was last insured. R. 24–33. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on February 22, 2024. R. 8–13. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On April 16, 2024, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[4] On June 13, 2024, the case was reassigned to the undersigned. ECF No. 7. The matter is ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

---

[4] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9,

2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent

4

such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id*. at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

**III.     ALJ DECISION AND APPELLATE ISSUES**

Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2020. R. 26. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 31, 2018, his amended alleged disability onset date, through December 31, 2020, the date on which Plaintiff was last insured for benefits. R. 27.

At step two, the ALJ found that Plaintiff 's chronic lung disease, history of recurrent gout, and obesity were severe impairments. *Id*. The ALJ also found that the following impairments were not severe: hypertension, hyperlipidemia, recurrent rash, obstructive sleep apnea, posttraumatic stress disorder ("PTSD"), and adjustment disorder with anxiety. R. 27–28.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 28.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 28–33. The ALJ also found that this RFC permitted the performance of Plaintiff's past relevant work as a sales representative, sales and auto; and manager, retail. R. 32–33. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 31, 2018, his amended alleged disability onset date, and December 31, 2020, the date on which he was last insured for benefits. R. 33.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 10; *Plaintiff's Reply Brief*, ECF No. 13. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing

legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12.

## IV.   DISCUSSION

At step two of the sequential evaluation, the ALJ concluded, *inter alia*, that Plaintiff's PTSD and adjustment disorder with anxiety were not severe impairments and resulted in no more than mild limitations in two functional areas:

> I note that claimant was diagnosed with posttraumatic stress disorder and adjustment disorder with anxiety. The record substantiates that claimant has the following degree of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: no limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, no limitation in concentrating, persisting, or maintaining pace, and a mild limitation in adapting or managing oneself. The evidence also failed to establish the presence of the "paragraph C" criteria.
>
> The record showed a history of approximately bi-weekly therapy for PTSD beginning around April 2020. I note an April 30, 2019 treatment record indicating claimant was not receiving any mental health treatment. His depression screening was essentially negative on that date. Claimant initially presented reporting symptoms including hypervigilance, fear in regard to someone following him and may break into his home, intrusive memories of past deployment, avoidance of situations, and isolation from others. Treatment records centered around claimant using CBT modules and practicing PFT to decrease reactive anxiety elevations. An August 19, 2020 report noted that in spite of recent food poisoning, and other medical complaints, claimant's mood and affect were moderately well managed along with his stress levels. He had no emergent mental health issues present. I note an October 16, 2020 report indicating claimant was alert and followed commands. Subsequent mental health treatment records into February 2022 continued to note no presence of emergent mental status factors. Exhibit 7F.
>
> Because claimant's medically determinable mental impairment causes no more than mild limitation in any of the functional areas, it is nonsevere (20 CFR 404.1520a(d)(1).

R. 27–28. After finding at step three of the sequential evaluation that none of Plaintiff's impairments met or medically equaled a listed impairment, R, 28, the ALJ found at step four of the process that Plaintiff had the RFC to perform a limited range of light work:

> After careful consideration of the entire record, I find that, through the date last insured, claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with breaks accommodated by normal work breaks. He could not climb ladders ropes or scaffolds. He could occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. He should avoid all exposure to high exposed places and moving mechanical parts. He should avoid even moderate exposure to atmospheric conditions as defined in the SCO.

R. 28. The ALJ specifically explained, *inter alia*, that "[i]n making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." R. 28. Other than noting that Plaintiff alleged disability due to, among other impairments, PTSD, anxiety, and depression, R. 29, the ALJ did not discuss Plaintiff's mental impairments—or any limitations flowing from those impairments—at step four. R. 28–33. At step five, and relying on the testimony of the vocational expert, the ALJ went on to find that Plaintiff was able to perform his past semi-skilled and skilled work as that work was generally performed: "sales representative (DOT 259.357-022, SVP 3, light): sales, auto (DOT 273.353.010, SVP 6, generally performed at light, actually performed at heavy), and manager, retail (DOT 185.167-046, SVP 7, generally performed at light, actually performed at heavy)." R. 32–33; *see also Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014) ("SVP levels . . . measure the skill level necessary to perform a particular job.") (citing SSR 00–4p, 2000 WL 1898704, at *3 (Dec. 4, 2000)); SSR 00-4p, 2000 WL 1898704, at *3 ("[U]nskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT [Dictionary of Occupational Titles].").

9

Plaintiff argues that the ALJ, having found at step two that Plaintiff's mental impairments resulted in mild limitations in his ability to interact with others and to adapt or manage himself, erred by failing both to translate these findings into functional restrictions and to explain in the RFC assessment why no related mental limitations had been included. *Plaintiff's Brief*, ECF No. 10, pp. 7–14 (collecting cases, including, *inter alia*, *Maria A. v. Soc. Sec. Admin.*, No. CV 23-2484, 2024 WL 943466 (D.N.J. Mar. 5, 2024); *Perez-Vega v. Kijakazi*, No. CV 22-3994, 2023 WL 3620747 (E.D. Pa. May 24, 2023)); *Plaintiff's Reply Brief*, ECF No. 13, pp. 1–5 (same). Plaintiff insists that this error was not harmless because these mental impairments, even though mild, precluded his ability to perform his past relevant semi-skilled work as a sales representative and his skilled work as auto sales and retail manager. *Id*. In support, Plaintiff points to the testimony of the vocational expert that Plaintiff would be unable to perform his past relevant work if he were limited to only occasional interaction with coworkers, supervisors, and the general public. *Plaintiff's Brief*, ECF No. 10, p. 13 (citing R. 77); *Plaintiff's Reply Brief*, ECF No. 13, p. 4–5 (same).

The Commissioner counters that "'[m]any courts in this District, however, have concluded that ALJs do not err when giving short shrift to non-severe mental impairments in RFC determinations' and that 'the trend from these cases is clear: [the ALJ] did not reversibly err by relying on his thorough step-two findings in crafting [the claimant's] RFC.'" *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 12, p. 11 (quoting *Gita P. v. Comm'r of Soc. Sec. Admin.*, No. CV 21-6087, 2022 WL 1683834, at *6 (D.N.J. May 26, 2022); citing *Grice v. Saul*, No. CV 20-02804, 2021 WL 4551357, at *8 (D.N.J. Oct. 5, 2021)). The Commissioner argues further that, even assuming that the ALJ should have further discussed at step four Plaintiff's mild mental impairments, any such error was harmless. *Id*. at 12–13 (collecting cases).

10

District court cases on this issue—*i.e.,* whether an ALJ errs by relying on step-two findings with little or no discussion at step four of mild limitations flowing from mental impairments when excluding such findings from the RFC—"are inconsistent[,]" *Perez-Vega*, 2023 WL 3620747, at *4 (collecting cases) (citations omitted); *see also Angros v. Bisignano*, No. C-24-1058, 2025 WL 2711148, at *7 (W.D. Pa. Sept. 23, 2025) (same) (citations omitted), and "[t]he U.S. Court of Appeals for the Third Circuit has not addressed this question head-on." *Gita P.*, 2022 WL 1683834, at *6. "Given the variety of decisions on this subject, and the lack of Third Circuit guidance, it is not clear whether this error can be described as a failure to follow an established rule." *Perez-Vega*, 2023 WL 3620747, at *6. "However, in order to decide whether to grant relief in this case, it is not crucial to decide this. If the ALJ erred in failing to follow a rule, it must still be determined whether or not the error warrants remand. Remand is not necessary where it would not affect the outcome of a case." *Id*. (citing *Rutherford v. Barnhart*, 399 F.3d 546, (3d Cir. 2005)); *see also id*. at *3, 6–7 (concluding that such error was harmful because the ALJ failed to explain why the conflicting report of a consulting medical examiner had not been considered and where the plaintiff had pointed out how her limitations affected her ability to perform past relevant skilled work); *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination. . . . [T]he party seeking reversal normally must explain why the erroneous ruling caused harm."); *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (stating that a harmless error review requires that the claimant explain how the error to which he points could have made any difference); *Rutherford*, 399 F.3d at 553 (finding that "a remand is not required here because it would not affect the outcome of the case").

In the present case, even assuming without definitively deciding that the ALJ erred by failing to expressly discuss Plaintiff's mild mental limitations at step two, the Court is not persuaded that any such failure amounts to more than harmless error.

Plaintiff argues that the medical records "support the need for mental health restrictions in the RFC[,]" pointing to four particular records. *Plaintiff's Brief*, ECF No. 10, pp. 11–12. This Court disagrees. Plaintiff first points to a record dated April 14, 2020, which "showed that the Plaintiff was instructed to 'start new journal that will delineate pattern of thinking and triggering situations that is eliciting his anxiety and irritability that also leads to avoidant behaviors'" and that "Plaintiff was diagnosed with PTSD and Chronic to Mild to Moderate Depression." *Id*. (quoting R. 1787). Plaintiff, however, does not explain how this evidence establishes that the information contained in this record would require a different RFC or would otherwise establish that Plaintiff is disabled. *See id*.; *see also Padgett v. Comm'r of Soc. Sec*., No. CV 16-9441, 2018 WL 1399307, at *2 (D.N.J. Mar. 20, 2018) ("[B]ecause Plaintiff has articulated no analysis of the evidence, the Court does not understand what argument Plaintiff has made here. Plaintiff has done no more than throw down a few pieces of an unknown jigsaw puzzle and left it to the Court to put them together. The Court does not assemble arguments for a party from fragments."). Notably, "[a] diagnosis alone, however, does not demonstrate disability." *Foley v. Comm'r of Soc. Sec.*, 349 F. App'x 805, 808 (3d Cir. 2009) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)); *cf. Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) ("[The claimant's] argument incorrectly focuses on the diagnosis of an impairment rather than the functional limitations that result from that impairment. A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act").

Plaintiff next points to a record dated May 14, 2020, which "indicated that his therapist 'focused [him] on managing heightened sadness, frustration and anger of Lung and other treatment's stalling or happening later due to corona virus restrictions. Also, focused [him] on any virtual connections he can make with others to decrease loneliness. His dog does give him support.'" *Plaintiff's Brief*, ECF No. 10, p. 12 (quoting R. 1782). Again, Plaintiff does not explain the significance of this evidence or how it could change the RFC determination. *See id*.

Plaintiff further refers to evidence dated June 10, 2020 (during the Covid pandemic), that "showed that the Plaintiff reported that he is 'laying low primarily at home and limiting contact with others or going out. He reports he is doing this also for stress/anxiety management as he is having continued difficulties tolerating too much time with others particularly if he considers there are too many people around him. We focused on paying attention to how he is breathing early on in having any stressbased changes. This will objectively help him to catch the stress response earlier and not having very poor breathing episodes due to stress.'" *Id*. (quoting R. 1780). As with the other cited records, Plaintiff simply points to this evidence without any analysis or suggestion of harm flowing from the ALJ's analysis of the record. *See id*.

Plaintiff also cites to a record dated March 25, 2021, generated after the lapse of his insured status on December 31, 2020, and indicating that Plaintiff "has been inpatient for a while at UPenn due to lung issues. Since hospitalization, return to home and the Boulder, CO mass shooting - he has had increased PTSD symptoms, eg, hypervigilance, feeling fear in regard to someone following him or may break into his home - breach his property, intrusive memories from past deployments, avoidance from situations and isolation from others. Past deployments source of PTSD - 1. Combat Vet Gulf War and 2. Rescue missions in Japan- i.e. MOS- Air Special Operations and Air Lift Rescue Control Elements Team. We re-established TX plan to

13

focus on PTSD with CPT and PST therapies every other week. Pending reductions in anxiety levels, may refer Vet to psychiatry.'" *Plaintiff's Brief*, ECF No. 10, pp. 12–13 (quoting R. 744). While Plaintiff generally asserts that "[t]hese medical records show the presence of mental health symptoms which affect Plaintiffs [sic] ability to work[,]" *id*. at 13, he fails to explain how these PTSD symptoms—which were documented after the lapse of his insured status—would change the RFC limitations during the relevant time period as found by the ALJ. *See id*. In short, Plaintiff has not persuaded the Court that this evidence establishes that the ALJ reversibly erred at step four when crafting the RFC. *See Rutherford*, 399 F.3d at 553; *Phillips*, 91 F. App'x at 780; *Padgett*, 2018 WL 1399307, at *2.

Finally, in challenging the ALJ's finding of only a *mild* limitation in Plaintiff's ability to interact with others, Plaintiff emphasizes the vocational expert's testimony that Plaintiff would be unable to perform his past relevant work if, in addition to the other limitations included in the RFC, Plaintiff could have only *occasional* interaction with coworkers, supervisors, and the general public. *Plaintiff's Brief*, ECF No. 10, p. 13 (citing R. 77); *Plaintiff's Reply Brief*, ECF No. 13, p. 4 (same). Further, and considering that the vocational expert also testified that Plaintiff's past relevant work provided no transferrable skills, Plaintiff argues that the Medical-Vocational Guidelines would direct a finding of disability. *Plaintiff's Brief*, ECF No. 10, pp. 13 (citing R. 28, 32, 50, 89, 94; 20 C.F.R. § 404.1563(e); 20 C.F.R. Part 404, Subpart P, App. 2 § 202.06) (directing a finding of disability for a claimant of advanced age with at least a high school education, who is unable to perform past relevant work and has no transferrable skills, and who has an RFC for light exertion); *Plaintiff's Reply Brief*, ECF No. 13, pp. 4–5 (same). Again, this argument is not well taken. As previously discussed, Plaintiff has not met his burden of showing that the record would support any mental limitation in the RFC. Plaintiff simply

14

asserts—without explanation or supporting evidence—that his *mild* limitation in interaction with others warrants an RFC limitation of only *occasional* interaction with supervisors, coworkers, and the general public. *Id*. Moreover, because the RFC found by the ALJ enjoys substantial support, it is irrelevant that the ALJ also posed to the vocational expert an alternative hypothetical that contained more limitations than did the RFC actually found by the ALJ. *Cf. Rutherford*, 399 F.3d at 554; *Podedworny*, 745 F.2d at 218; *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.").

Under all these circumstances, the Court cannot conclude that the ALJ reversibly erred in failing to include or to discuss at step four any limitations flowing from Plaintiff's mild mental impairments.

## V.     CONCLUSION

Accordingly, the Court **AFFIRMS** the Commissioner's decision.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  January 12, 2025                                    *s/Norah McCann King*
                                                                   NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE